**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ASHLEY MULVILHILL,

Plaintiff,

v.

6:26-CV-1517
(ECC/DJS)

RICKI KUCHLER, *et al.*,

Defendants.

D

**APPEARANCES:**

ASHLEY MULVILHILL
Plaintiff, *Pro Se*
Forestport, New York 13338

J

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

S

The Clerk has forwarded for review a Complaint filed by *pro se* Plaintiff Ashley Mulvilhill ("Plaintiff"). Dkt. No. 1, Compl.[1] The filing fee in this action has not been paid, but Plaintiff filed a Motion to Proceed *in forma pauperis*. Dkt. No. 2. That Motion has been granted. Plaintiff also filed a Motion for Appointment of Counsel. Dkt. No. 4. This matter has been referred to the undersigned for an initial review pursuant to L.R.

[1] Citations to Plaintiff's Complaint are to page numbers provided by the Court's CM/ECF system.

72.3. The Court recommends that the Complaint be dismissed, and that Plaintiff's Motion for Appointment of Counsel be denied.

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2]

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

**B. Federal Pleading Standards**

In its current state, the Complaint fails to clearly articulate the precise nature of Plaintiff's factual and legal claims. *See generally* Compl. Plaintiff commenced this action using a form complaint for actions pursuant to Title VII of the Civil Rights Act ("Title VII"), *id.* at pp. 2 & 6, as well as a form complaint for actions pursuant to 42 U.S.C. § 1983 ("Section 1983"). *Id.* at p. 1. While Title VII covers employment

discrimination, *see*, *e.g.*, 42 U.S.C. §2000e-2, it does not appear from the facts alleged in the Complaint that Plaintiff was an employee of any of the Defendants. *See generally* Compl. Likewise, while Section 1983 allows individuals to sue state or local government officials for violations of their rights, 42 U.S.C § 1983, it does not appear from the facts alleged in the Complaint that Plaintiff is suing a government official, *see generally* Compl., except Judge Crandall, Dkt. No. 2-1 at p. 1, the propriety of which is addressed in more detail below. *See infra* section I.C.

The Complaint appears to relate to events following the death of Plaintiff's mother. *See generally* Compl. Plaintiff alleges that Ricki Kuchler ("Ricki"), who appears to be Plaintiff's sister, *id.* at p. 4; Dkt. No. 1-1 at pp. 2-4, "kicked me out of our mother[']s home," "began taking items even my personal items," "refused to allow me to find my own apartment or vehicle," "refused to allow me to have any part in the death arrangements for our mother," "sold my mother[']s home to the neighbor," "opened accounts in my name," and got into "a verbal altercation [with me] at our mother's home where [she] attacked me." Compl. at pp. 4-5. Plaintiff further makes certain allegations related to court proceedings, including that Ricki "took me to court in both Herkimer and Oneida Counties and lied on the court [d]ocuments that a domestic dispute occurred." *Id.* at p. 5. Plaintiff also alleges that "[t]he death certificate," *id.*, presumably for her mother, *see* Dkt. No. 1-1 at p. 82 (containing certificate of death for Marybeth Mulvihill), "is missing info," Compl. at p. 5, and contends that she "was [her] mother's beneficiary," but

"they gave [Plaintiff's] sister all of the money." Dkt. No. 1-1 at p. 7; *see also* Dkt. No. 1-1 at pp. 11-18 (attaching Last Will and Testament of Marybeth Mulvihill).

The Complaint does not allege any conduct on behalf of anyone other than Ricki, *see generally* Compl., other than to reference Ricki and Peter Kuchler ("Peter") as "trustee/executor." *Id.* at pp. 1-2 & 4; *see also* Dkt. No. 1-1 at pp. 20-21 (listing Ricki as fiduciary and executrix) & 22 (listing Ricki as trustee). Nevertheless, in addition to Ricki and Peter, Plaintiff seeks summonses for the following Defendants: Judge Crandall of the Herkimer County Surrogate Court; Camille Kahler ("Camille"); Deborah VanSlyke; Gregory VanSlyke; and Custom Wealth Management. See Dkt. No. 2-1 at p. 1. It is not entirely clear what relation these remaining Defendants have to this action. An "investment company" is referenced, Dkt. No. 1-1 at pp. 5-6, but it is uncertain if that is intended to refer to Custom Wealth Management. Various documents are attached to the Complaint. *See generally* Dkt. No. 1-1. Camille is listed as the attorney on an "Affidavit of Fiduciary" attached to the Complaint, *id.* at p. 21, among other documents attached to the Complaint, *see generally* Dkt. No. 1-1, but is not otherwise named in the allegations contained in the Complaint. *See generally* Compl.

Plaintiff lists three causes of action, *id.* at p. 7, but it remains unclear what the legal basis is for any of her claims. The first cause of action seems to relate to the probate proceedings for Plaintiff's mother, notes "[a]ll documents are changed and forged as to probate," and appears to request "documentation as to a trust or accounting or my mothers

finances or legal sale of her home." *Id.* The second cause of action asserts that Plaintiff is "not incompetent and [is] able to control [her] own affairs and monies," and contends that her "identity has been stolen." *Id.* Finally, the third cause of action states that Plaintiff is "unable to obtain any help or legal representation." *Id.* Plaintiff "requests her removed and him removed as trustees of my money and that all money be repaid to me." *Id.* at p. 8. Consequently, while the Complaint identifies the basis for jurisdiction in this case to be federal question jurisdiction, *id.* at p. 3, it is not clear that any of Plaintiff's claims arise under the Constitution or any other federal law or treaty.

This failure to provide proper notice renders dismissal of the Complaint appropriate. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The rule serves to make certain that the party named as a defendant is on notice of the claims being asserted against it. *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995). A complaint that fails to comply with these Rules "presents far too heavy a burden in terms of [defendant's] duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the

plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Accordingly, the Court recommends that the Complaint be dismissed for failure to provide proper notice of the basis of Plaintiff's claims. In addition, as noted below, additional substantive issues with the Complaint also warrant dismissal.

**C. Viability of Federal Claims**

*1. Section 1983 – State Action and Personal Involvement*

To the extent that Plaintiff attempts to assert claims pursuant to Section 1983, Compl. at p. 1, additional reasons provide independent bases for dismissal of all Defendants.

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Flagg v.*

*Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d at 186) (internal quotations and alterations omitted).

Aside from Judge Crandall, the individuals named in the Complaint all appear to be private parties. *See generally* Compl. The Complaint appears to indicate that Ricki is Plaintiff's sister. *Id.* at p. 4; Dkt. No. 1-1 at p. 2. The Complaint also references Ricki and Peter as "trustee/executor." Compl. at pp. 1-2 & 4. The Complaint does not assert that any of the Defendants are state actors, and makes no allegations from which the Court can infer that any of the Defendants besides Judge Crandall is a state actor. *See generally* Compl. "Private parties are generally not amenable to suit under § 1983, because they are not state actors." *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664 (2d Cir. 2009). The mere fact that Ricki may have allegedly availed herself of the judicial system or was involved in it, *see*, *e.g.*, Compl. at p. 5; Dkt. No. 1-1 at p. 4, does not make her or any of the other Defendants a state actor. *Sam & Mary Hous. Corp. v. New York State*, 632 F. Supp. 1448, 1450 (S.D.N.Y. 1986) ("one does not become a state actor merely by being a litigant in a state court action."). Likewise, Ricki and Peter's roles as trustees or executors do not make them state actors. *See*, *e.g.*, *Howe v. First Am. Title Agency*, 2026 WL 672956, at *4 (E.D. Mich. Mar. 9, 2026) ("[C]ourt-appointed personal representatives, estate executors, and estate administrators are not state actors for § 1983 purposes simply by virtue of their appointment."). Finally, that any Defendant may have spoken or provided a statement to a police officer or a court, even if that information was

false, *see*, *e.g.*, Compl. at p. 7; Dkt. No. 1-1 at pp. 1, 4, & 9, is insufficient to transform any such individual into a state actor. *See*, *e.g.*, *Heinemann v. Patchey*, 2017 WL 1115203, at *4 (D. Conn. Mar. 24, 2017) ("Despite the fact that various defendants were alleged to have been appointed by the probate court as trustees or administrators of the living trust, this does not suffice to establish that their subsequent actions constituted state action for purposes of liability under Section 1983."); *Sentementes v. Lamont*, 2021 WL 1857284, at *3 (D. Conn. May 10, 2021) (citing cases).

Additionally, it is not clear to the Court what, if any, personal involvement any of the Defendants aside from Ricki have to this matter, which makes Plaintiff's claims against them insufficient to establish liability pursuant to Section 1983. *See Ali v. Oneida Cnty. Dist. Att'y*, 2023 WL 7124513, at *5-6 (N.D.N.Y. Oct. 30, 2023), *report and recommendation adopted*, 2023 WL 8798116 (N.D.N.Y. Dec. 20, 2023).

Accordingly, the Court recommends that the Section 1983 claims against all Defendants except Judge Randall be dismissed based on a failure to allege state action, and that, additionally, the Section 1983 claims against all Defendants except Ricki be dismissed based on failure to allege personal involvement.

*2. Immunity*

Judge Crandall is also subject to dismissal for an additional reason.

Judicial immunity is applicable to conduct taken by a court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those

performed in the clear absence of all jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967). The Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 336 (1871)). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

"Judicial immunity is overcome in only two circumstances: (1) a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity; and (2) a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *McCluskey v. Roberts*, 2022 WL 2046079, at *5 (2d Cir. June 7, 2022) (internal quotation omitted). Acts related to a specific case are judicial in nature. *Bliven v. Hunt*, 579 F.3d at 210. And "[j]udicial immunity applies to these judicial acts even if they were allegedly done maliciously or corruptly." *McCluskey v. Roberts*, 2022 WL 2046079, at *5.

Plaintiff makes no specific claims against Judge Crandall. *See generally* Compl; *supra* section I.C.1. Presumably, Judge Crandall was somehow involved in the court proceedings discussed by Plaintiff that took place in Herkimer County, Compl. at p. 5,

though Plaintiff does not state so or explain how. To the extent that Plaintiff's allegations against Judge Crandall relate to the performance of his official duties in overseeing any court proceedings involving Plaintiff, no exception to the immunity doctrine would apply. *See*, *e.g.*, *Collins v. W. Hartford Police Dep't*, 380 F. Supp. 2d 83, 91 (D. Conn. 2005), *aff'd on other grounds*, 324 F. App'x 137 (2d Cir. 2009) ("[B]ecause plaintiff's allegations against Judge Elkin arise from his judicial acts within the scope of his jurisdiction as Probate Judge, he is immune from liability, and plaintiff's § 1983 claim against Judge Elkin for alleged constitutional violations cannot prevail.").

To the extent that Plaintiff is attempting to assert any claims against the Herkimer County Probate Court more generally under Section 1983, *See* Dkt. No. 2-1 at p. 1, those claims should likewise be dismissed because they are barred by "the Eleventh Amendment which provides states immunity in federal court." *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). The immunity applies both to the State itself and state agencies. *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"). "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014) (citation omitted). "It is well-established that New York

has not consented to § 1983 suits in federal court and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citations omitted). No other basis for waiver or abrogation is set forth in the Complaint. New York probate courts "are part of 'the New York State Unified Court System[, which is] unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity.'" *Dodd v. O'Sullivan*, 2020 WL 204253, at *4 (N.D.N.Y. Jan. 14, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009)); *see also Mitchell v. Connecticut Region 14 Dist. Prob. Ct.*, 2015 WL 4094188, at *3 (D. Conn. July 7, 2015) ("All of plaintiff's claims against the Connecticut Region 14 District Probate Court and the State of Connecticut Probate Division are plainly precluded by the Eleventh Amendment, which bars claims in federal court against a state without its consent.").

Accordingly, the Court recommends that the Section 1983 claims against Judge Crandall be dismissed based on judicial immunity, and that any Section 1983 claim against the Herkimer County Probate Court be dismissed pursuant to the Eleventh Amendment.

**D. Jurisdiction**

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir.

1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); *Manway Const. Co. v. Hous. Auth. of City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "Federal jurisdiction exists only when a federal question is presented (28 U.S.C. § 1331), or where there is diversity of citizenship and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332)." *Boimah v. New York State Workers' Comp. Bd.*, 2018 WL 3850785, at *2 (N.D.N.Y. July 9, 2018), *report and recommendation adopted*, 2018 WL 3850630 (N.D.N.Y. Aug. 13, 2018) (internal quotation omitted).

"Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotations omitted). Here, the Complaint alleges that Plaintiff and several of the Defendants reside in New York, Compl. at pp. 1-4, which destroys complete diversity. *See Cushing v. Moore*, 783 F. Supp. 727, 733 (N.D.N.Y.) ("[T]he presence of some plaintiffs who share citizenship with some

defendants destroys complete diversity of citizenship."), *aff'd in part, remanded in part*, 970 F.2d 1103 (2d Cir. 1992).

The Complaint identifies the basis for jurisdiction in this case to be federal question jurisdiction, Compl. at p. 3, and Plaintiff uses form complaints for actions pursuant to Title VII and Section 1983. *Id.* at pp. 1-2 & 6. However, as previously explained, it does not appear from the facts alleged in the Complaint that Plaintiff was an employee of any of the Defendants for purposes of Title VII or that Plaintiff is suing a government official for purposes of Section 1983, except for Judge Crandall, *see supra* sections I.B & I.C.1, who the Court has recommended dismissal of on immunity grounds. *See supra* section I.C.2. The Court has also provided other bases for dismissal of Plaintiff's Section 1983 claims against all Defendants. *See supra* section I.C. Additionally, it does not appear that any of the claims asserted by Plaintiff arise under the Constitution or any other federal law or treaty. *See supra* section I.B.

Even assuming that the Complaint asserts a federal claim, the Court has recommended dismissal of those claims, *see* section II.B, and also likewise recommends that the District Court decline to exercise supplemental jurisdiction over any remaining state claims. The Court's consideration of the state law claims must be predicated upon the application of supplemental jurisdiction. A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. Subsection (a) of § 1367 provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . ..

28 U.S.C. § 1367(a).

A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction[.]"); *Osborn v. Haley*, 549 U.S. 225, 245 (2007). But the Supreme Court has given significant guidance on this question when all federal claims are dismissed at the outset of a case. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). In light of that guidance, it is recommended that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.[3]

[3] Should Plaintiff be granted leave to amend and assert a viable federal claim as well as state law claims the appropriateness of exercising supplemental jurisdiction can be reconsidered.

## II. APPOINTMENT OF COUNSEL

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)).

This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge v. Police Officers*, 802 F.2d at 61).

At this moment in time, the Court recommends that none of Plaintiff's claims against any of the defendants be permitted to proceed, and therefore, appointment of counsel is unwarranted. Accordingly, Plaintiff's Motion for Appointment of Counsel is denied without prejudice to being renewed.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Complaint (Dkt. No. 1) be **DISMISSED** as set forth above; and it is

**ORDERED**, that Plaintiff's Motion for Appointment of Counsel (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: September 15, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge